UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| CHARLES STEENO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:10-CV-00014-JD |
| | ) |
| WABASH NATIONAL | ) |
| TRAILER CENTERS, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Now before the Court is Defendant's Motion for Summary Judgment [DE 39], filed on January 31, 2011. Plaintiff responded on May 23, 2011 [DE 64], and Defendant replied on June 3, 2011 [DE 65]. For the following reasons, Defendant's Motion for Summary Judgment is GRANTED.

**I. BACKGROUND**

Plaintiff, Charles Steeno, began his employment with Wabash National Trailer Centers on October 1, 2001. DE 40-2 at 2. Steeno worked at Wabash's Calhoun, Georgia location, a Used Trailer Center operated by Wabash Used Fleet Sales. *Id.* at 1. At all times relevant to the present case, Steeno's job title was Southeast Regional Used Trailer Director. DE 40-4 at 1. His responsibilities included buying and selling trailers, visiting dealers, meeting budget expectations, and generating sales. *Id.* Dudley Gayman, the director for the division, was Steeno's direct supervisor. *Id.* Steeno was 72 years old when his employment was terminated on April 1, 2009. DE 40-2 at 3.

Beginning in or about 2008, Wabash began to experience serious financial problems. DE 40-4 at 2. In 2008, Wabash, as a whole, lost approximately $124.7 million. *Id.* In response,

Wabash implemented a company-wide 10% reduction in pay for all exempt-level salaried employees. DE 40-2 at 3; DE 40-4 at 2. Steeno's pay was reduced from $102,451 to $92,205.90 annually. DE 40-2 at 3. Wabash also began drastically cutting its personnel, cutting approximately 1,000 jobs in 2008. *Id.*

During the first quarter of 2009, Wabash's financial losses were approximately $28.3 million, prompting further cost-cutting measures. DE 40-4 at 2. In an effort to cut costs, Wabash stopped production at multiple plants and assembly lines. *Id.* Between January 2009 and June 2009, approximately 70 salaried employees were terminated. DE 40-2 at 3. The terminated employees' ages ranged from 23 years old to 73 years old, and approximately one third of the employees terminated were under the age of 40. *Id.*

Beginning in January 2009, Gayman and Bruce Ewald, Wabash's Senior Vice-President for Sales and Marketing considered what cost-cutting measures could be taken at each of the Used Trailer Division locations, including the Georgia location where Steeno worked. DE 40-4 at 3; DE 40-5 at 2. Ewald and Gayman initially terminated a 41-year-old Fleet Damage Recovery Supervisor from Wabash's Indiana Used Trailer Center. DE 40-2 at 3; DE 40-4 at 3; DE 40-5 at 2. When this single termination from the Used Trailer Division proved insufficient to remedy the division's financial losses, Ewald and Gayman determined that further cuts were necessary. DE 40-4 at 3. Ewald and Gayman examined the volume of business performed at each Used Trailer Center location, as well as the duties performed by employees at each location. DE 40-4 at 3; DE 40-5 at 2. They found that the Georgia, Texas, and Illinois locations were overstaffed based on the volume of business conducted at each location. DE 40-4 at 3; DE 40-5 at 2. Ewald and Gayman determined that one employee from each location should be

terminated to reconcile the overstaffing problem. DE 40-4 at 3; DE 40-5 at 2. Ewald and Gayman decided to terminate a 43-year-old Used Trailer Coordinator and a 36-year-old Used Trailer Account Manager at the other Used Trailer Centers. DE 40-2 at 4; DE 40-4 at 4; DE 40-5 at 2.

When considering the employees at the Georgia Used Trailer Center, Ewald and Gayman compared Steeno to 65-year-old Used Trailer Manager Anthony Angio. DE 40-4 at 3; DE 40-5 at 2. They determined that both Steeno and Angio were performing their duties equally well, and that either employee could be terminated without disrupting the day-to-day business operations of that location. DE 40-4 at 4; DE 40-5 at 2. At the time, Angio's annual salary was $69,988.50, compared to Steeno's annual salary of $92,205.90. DE 40-2 at 3. Both Ewald and Gayman stated in their affidavits that the overall goal of terminating an employee was to save the most money for the company, and therefore they chose to terminate Steeno, whose salary was more than $20,000 per year higher than Angio's. DE 40-4 at 3-4; DE 40-5 at 2. Both also stated that age was not a factor in deciding who would be terminated, and that it was never discussed as a part of the decision-making process. DE 40-4 at 4; DE 40-5 at 2.

On April 1, 2009, Human Resources Manager Mick Maris met with Steeno to advise him of his termination. DE 40-2 at 3. At no time during this meeting did Maris indicate that Steeno was being terminated because of his age. *Id.* In his affidavit, Maris stated that he was under the impression that Steeno's termination was a result of the economic downturn Wabash had experienced. *Id.* Following Steeno's termination, his responsibilities were absorbed by Angio and the Northeast Regional Used Trailer Director, Tom Heuer, a fifty-four year old. DE 40-4 at 4.

3

On August 27, 2009, Steeno filed the instant lawsuit, alleging that he had been terminated in violation of the Age Discrimination in Employment Act ("ADEA"), as well as claiming a violation of the Fair Labor Standards Act ("FLSA").  This Court subsequently dismissed his FLSA claim, leaving only his age discrimination claim pending.  DE 36.

## A.  Steeno's Deposition

On December 3, 2010, Steeno gave an oral deposition in conjunction with this action. DE 40-3.  After being sworn in, Steeno confirmed that he had been working for Wabash since October 2001, just before his sixty-fifth birthday.  DE 40-3 at 6-7.  Steeno stated that he signed a written acknowledgment that his employment with Wabash was at-will employment.  *Id.* at 9. Next, Steeno was asked to review the salaried associate handbook from July 2004.  *Id.* at 10-11. He stated that while he did not remember receiving it, he may have as a part of the company's new-hire paperwork.  *Id*. at 10.  He also stated that he did not remember reading the company's Equal Employment Opportunity Policy.  *Id.* at 11.

Steeno stated that he was not entirely aware of the financial difficulties Wabash faced in 2008.  DE 40-3 at 14.  He explained that he was not aware of the amount of money Wabash lost in 2008, but that he had a level of understanding of the difficulties due to the general state of the economy.  *Id.*  He affirmed that salaries were cut by ten percent as a cost cutting measure.  *Id.* at 15.  He also stated that he was aware that the used trailer division did not achieve its goals for the year 2008.  *Id.*  When asked about the company's financial well-being in 2009, Steeno again answered that he was aware the company lost money, but was not aware of the figure.  *Id*. at 16-17.  He said that he was aware that the company took additional cost-cutting measures: specifically, the company stopped contributing to employee 401(k)s.  *Id.* at 17.  Steeno

acknowledged that he had prepared a report in February 2009 that showed his location was forty-one sales below the budgeted number for the month of February, and fifty-five sales below the budgeted number for year-to-date sales in 2009. *Id.* at 17-19.

Next, Steeno described the conversation he had with Maris when he was terminated. DE 40-3 at 19. He stated that the conversation was short, and that no one else was present during the meeting. *Id.* Maris did not give Steeno a reason for his termination, and did not state that Steeno was terminated because of his age. *Id*. at 22. Steeno stated that at the time he was terminated, Wabash had four used-trailer centers nationwide. *Id.* at 20-21. Steeno next acknowledged that Angio was a used-trailer account manager at the facility in Georgia, and estimated that at the time he was terminated, Angio's salary was approximately $80,000 per year. *Id.* at 21. He also stated that he had no knowledge of the other employees in the used-trailer sales division that had been terminated in either 2008 or 2009. *Id.* Steeno affirmed that he had no personal knowledge of the process used to determine which employees were going to be terminated in 2009. *Id.* at 24.

Steeno said that he was given a copy of a Release of Severance Agreement that he was given when he was terminated. DE 40-3 at 24. He stated that he was not aware that this agreement had been given to the other terminated employees. *Id.* at 25. Steeno affirmed that he did not accept the terms of the Release and Severance Agreement. *Id.* Next, Steeno examined a list of employees who had been terminated and stated that three of the employees had been employed in the used-trailer division. *Id.* at 25-27. From the same list, Steeno read that the ages of those three employees were seventy-three, forty-three, and thirty-six. *Id.* at 27.

Steeno then described why he felt he had been fired because of his age. DE 40-3 at 28-29. He stated that he felt that the fact that he was the most productive used trailer manager was telling. *Id.* at 28-29. He asserted that he was sure his performance was not an issue, and that it did not make sense to him that a company would get rid of its best-producing employees. *Id.* at 29. Steeno acknowledged that he was aware that the District Court had dismissed the claims filed under the Fair Labor Standards Act. *Id.* at 31. He also stated that there were no additional facts that he would add to his first Amended Complaint filed against Wabash. *Id.* at 32.

## II.  SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dembsey v. Atchison*, *Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the evidence which "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law." *Brown v. City of Lafayette*, No. 4:08-CV-69, 2010 WL 1570805, at *2 (N.D. Ind. Apr. 16, 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Once the moving party has met this burden, the nonmoving party may not merely rely on allegations or denials in its own pleading; rather its response must set out specific facts showing

a genuine issue for trial.  Fed. R. Civ. P. 56(c)(1); *Beard v. Whitley Cnty. REMC,* 840 F.2d 405, 410 (7th Cir. 1988).  To establish a genuine issue of fact, the nonmoving party must come forward with specific facts showing that there is a genuine issue necessitating trial, not "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *First Nat'l Bank of Cicero v. Lewco Secs. Corp.*, 860 F.2d 1407, 1411 (7th Cir. 1988).

If the nonmoving party fails to establish the existence of an essential element on which it bears the burden of proof at trial, summary judgment is proper—even mandated.  *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006) (citing *Celotex*, 477 U.S. at 322-23 (holding that a failure to prove one essential element "necessarily renders all other facts immaterial")).  In ruling on a motion for summary judgment, a court must view all facts in the light most favorable to the nonmoving party.  *Anderson*, 477 U.S. at 255; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999); *NUCOR Corp. v. Aceros Y Maquilas de Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

### III.  DISCUSSION

Steeno alleges that Wabash terminated his employment because of his age, in violation of the ADEA.  DE 4 at 1-2.  The ADEA prohibits employers from discriminating against employees who are 40 years old or older on the basis of their age.  29 U.S.C. §§ 623(a), 631(a).  Unlawful discrimination under this statute may be proved through direct evidence of impermissible motive, or indirectly through the burden-shifting method outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-04 (1973).  *See also Tubergen*

*v. St. Vincent Hosp. and Health Care Ctr., Inc.*, 517 F.3d 470, 474 (7th Cir. 2008) (applying the *McDonnell Douglas* method to age discrimination cases under the ADEA).

Under the direct method of proof, Steeno can show either an admission by the decision maker that his actions were based on the prohibited discrimination or a convincing mosaic of circumstantial evidence that points directly to a discriminatory reason for the employer's action. *Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009); *Davis v. Con-Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 783 (7th Cir. 2004). "Direct evidence is evidence that, if believed by the trier of fact, would prove discriminatory conduct on the part of the employer without reliance on inference or presumption." *Rhodes v. Ill. Dept. Of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004). Because admissions of discriminatory intent are rare, circumstantial evidence is more typically proffered to show discriminatory intent under the direct method of proof. *Darchak*, 580 F.3d at 631 (noting examples of circumstantial evidence, including: suspicious timing, ambiguous oral or written statements, statistical evidence of disparate treatment, and passing over otherwise qualified candidates in hiring). *See also Lewis v. Sch. Dist. #70*, 523 F.3d 730, 742 (7th Cir. 2008) ("Circumstantial evidence allows the trier of fact to infer intentional discrimination by the decisionmaker.") However, such circumstantial evidence "must point directly to a discriminatory reason for the employer's action." *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003).

Steeno's claim cannot proceed under the direct evidence method. He does not present any evidence showing that he was terminated due to his age, and even viewing the circumstantial evidence in the light most favorable to Steeno, it does not establish a chain of inferences pointing directly to a discriminatory reason for Wabash's action.

Because Steeno cannot proceed under the direct method, he must proceed under the indirect method, which requires him to establish four distinct elements of a prima facie case:  (1) he is a member of a protected class; (2) he was performing at a level that met his employer's legitimate expectations; (3) he was subject to an adverse employment action; and (4) he was treated differently than other similarly situated employees who were not members of his protected class or were substantially younger.  *McDonnell Douglas*, 411 U.S. at 802; *Tubergen*, 517 F.3d at 475.

However, "[b]ecause unlawful discrimination can occur in a variety of employment contexts, '[the Seventh Circuit has] adapted the requirements for making a prima facie case in special cases to reflect the reality of the workplace.'"  *Krchnavy v. Limagrain Genetics Corp.*, 294 F.3d 871, 875 (7th Cir. 2002) (quoting *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 693 (7th Cir. 2000) (age discrimination case)).  *See also O'Regan v. Arbitrarion Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (noting that the *McDonnell Douglas* framework applies to both claims of age and sex discrimination).  As a result, the showing necessary to establish differential treatment depends on the facts of the case.

A traditional reduction in force ("RIF") occurs when an employer decides to permanently eliminate multiple positions from its workforce, allegedly for economic reasons.  *Bellaver v. Quanex Corp.*, 200 F.3d 485, 494 (7th Cir. 2000); *Michas*, 209 F.3d at 693.  In such a case, a plaintiff must make a factual showing that similarly situated employees not in the protected class were treated better than the terminated plaintiff.  *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 691 n.1 (7th Cir. 2006); *Michas*, 209 F.3d at 693.

In contrast, a mini-reduction in force ("mini-RIF") occurs when a single employee is terminated, allegedly for economic reasons, and the employee's duties are absorbed by other employees who were not terminated. *Filar v. Bd. of Educ. of City of Chicago*, 526 F.3d 1054, 1060 (7th Cir. 2008); *Merillat*, 470 F.3d at 690; *Bellaver*, 200 F.3d at 495 ("The point of the mini-RIF, unlike a true RIF, is that the job really was not eliminated at all; because the fired employee's duties were absorbed by others, they were effectively 'replaced' not eliminated."); *Michas*, 209 F.3d at 693.

Unlike a traditional RIF case, a plaintiff in a mini-RIF case need not make a factual showing that similarly situated employees were treated better, because the inference of discrimination arises from the fact that they were outside the protected class. *Merillat*, 470 F.3d at 690; *Michas*, 209 F.3d at 693; *Bellaver*, 200 F.3d at 495. Instead, the plaintiff need only show that his job duties were absorbed by an employee outside the protected class. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 492 (7th Cir. 2007); *Merillat*, 470 F.3d 690-91; *Michas*, 209 F.3d at 693: *Hamilton v. Nat'l Propane*, 276 F. Supp. 2d 934, 945-46 (W.D. Wis. 2002) (noting that when multiple employees absorbed the terminated plaintiff's duties, the plaintiff must additionally show that an employee *outside the protected class* mostly absorbed his job duties, in terms of proportional comparison to other employees within the protected class who absorbed some of the job duties).

"[T]he determinative factor in deciding whether the mini-RIF variation applies is whether the discharged employee's duties were absorbed by an existing employee or eliminated, not the number of employees let go." *Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 725 (7th Cir. 2008); *accord Merillat*, 470 F.3d at 691 n.1 (employing a mini-RIF analysis to a case in which

multiple individuals were laid off and their duties were absorbed by remaining workers); *Paluk v. Gooding Rubber Co.*, 221 F.3d 1003, 1012 n.5 (7th Cir. 2000) ("For purposes of deciding the proper prima facie case requirements to apply, our inquiry is dependent not on the number of employees terminated, but 'on whether the [the employer] still needed [the plaintiff's] job responsibilities to be performed.'") (quoting *Michas*, 209 F.3d at 694).

The termination in this case is best categorized as a mini-RIF for purposes of legal analysis. In his affidavit, Gayman stated outright that when Steeno's position was eliminated, his duties were absorbed by Angio and Heuer. DE 40-4 at 4. Because his duties were reassigned, the Court will employ a mini-RIF analysis. *See Merillat*, 470 F.3d at 691 n.1 (considering layoff a mini-RIF despite the fact that multiple individuals were let go); *Paluk*, 221 F.3d at 1012 n.5 (same).

**A. Prima Facie Case**

As a threshold matter, the evidence establishes the first three elements of Steeno's claim conclusively. There is no dispute that: (1) Steeno was seventy-two years old, and is therefore within a protected class for purposes of the ADEA; (2) Steeno was performing at a level that met his employer's legitimate expectations; and (3) Steeno was subject to an adverse employment action when he was terminated. The final element—that his job duties were absorbed by an employee outside the protected class—requires a brief analysis, but the Court concludes that Steeno has established his prima facie case.

Both Angio and Heuer, who absorbed Steeno's responsibilities, were over the age of forty, and therefore were within Steeno's protected class. When both the plaintiff and those who absorbed his duties are in the same protected class, "the prima facie case under the ADEA

require[s] a sufficient disparity in ages." *Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887, 892 (7th Cir. 1997). *See also O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996) ("The fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class."). The Seventh Circuit "consider[s] a ten-year difference in ages (between the plaintiff and [his] replacement) to be presumptively 'substantial.'" *Hartley*, 124 F.3d at 893 (holding that a six- and seven-year age gap were insubstantial absent evidence that the defendant viewed age to be a significant factor). *See also Bennington v. Caterpillar Inc.*, 275 F.3d 654, 659 (7th Cir. 2001) (finding a five-year age difference presumptively unsubstantial); *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 619 (7th Cir. 2000) (holding a seven- and a nine-year age difference not significant enough to create an inference of age discrimination); *Pitasi v. Gartner Group, Inc.*, 184 F.3d 709, 717 (7th Cir. 1999) (finding an eight-year age difference not significant enough).

At the time Steeno was terminated, Angio assumed part of his responsibilities. Angio was sixty-five years old, and therefore only seven years younger than Steeno. Under Seventh Circuit case law, then, the difference in their ages is not presumptively significant unless Steeno can present evidence indicating that Wabash "considere[d] his age to be significant." *Hartley*, 124 F.3d at 893. As discussed above, Steeno has presented no evidence showing that Wabash considered his age a significant factor in its decision to terminate him. Therefore, as it relates to Angio, Steeno's prima facie case for age discrimination must fail.

Heuer, on the other hand, was fifty-four at the time Steeno was terminated.[1] The difference in ages between Heuer and Steeno, eighteen years, does satisfy the "substantial" age difference for an inference of age discrimination. See *id.* at 894 (finding an age difference of at least ten years presumptively substantial). However, several courts in this circuit, including this one, have further refined the mini-RIF standard to require a showing that his duties were "absorbed *mostly* by substantially younger employees," *Hamilton*, 276 F. Supp. 2d at 945-46, although the Seventh Circuit itself has never expressly approved this gloss. For Steeno to establish a prima facie case under this standard, he would also need to show that Heuer, and not Angio, *mostly* absorbed his job duties. The "absorbed mostly by substantially younger employees" element is still underdeveloped, however, and no consistent standard has yet emerged for how to evaluate what constitutes "mostly absorbed." The options include: where the "bulk" of the discharged employee's duties are distributed to substantially younger employees, *Young v. Ill. Dept. of Revenue*, 2008 WL 162120, at *4 (C.D. Ill., Jan. 16 2008); for a manager, where the majority of the divisions, projects, or subordinates overseen are reassigned to substantially younger employees, *Hamilton*, 276 F. Supp. 2d at 945-46; or, if job responsibilities are distributed to two or more employees, where more than half of those employees are

---

[1] Although Steeno does not list Heuer among those he considers similarly situated and does not argue that his prima facie case rests on a comparison between himself and Heuer, the Court considers this issue for the sake of completeness and because Heuer, as the other Wabash employee who assumed Steeno's responsibilities, is the only other logical candidate for comparison. In Steeno's Exhibit B, he lists other employees that he alleges were substantially similar to him, and yet treated more favorably. DE 64 at 5; DE 64-2. These other employees are not relevant to the mini-RIF analysis, however, because they did not absorb Steeno's job responsibilities. If these other employees were indeed similarly situated, despite being employed at locations other than the Calhoun, Georgia location where Steeno worked, it might serve to establish Steeno's prima facie case under a traditional RIF analysis as well. But the Court need not resolve that question because it finds that Steeno has established his prima facie case based on the fact that Heuer was substantially younger.

substantially younger than the plaintiff. *Wells v. EMF Corp.*, 757 F. Supp. 2d 791, 802 (N.D.Ind. 2010); *Bartlett v. NIBCO, Inc.*, 2010 WL 1779887, at *8 (N.D. Ind., Apr. 28, 2010); *Kazhinsky v. William W. Meyer & Sons, Inc.*, 2003 WL 22735867, at *5 (N.D. Ill., Nov. 19, 2003). The Court recognizes this precedent, and that there are clearly cases where the job duties absorbed by employees outside the protected class are too meager to support a prima facie case under the mini-RIF analysis. But the Court is reluctant, absent some prior clear guidance by the Seventh Circuit, to impose any too-rigorous additional element on the mini-RIF analysis. Therefore, rather than choose one of these options, or add another to the mix, the Court concludes that this burden is met if there is evidence that, by *any* measure, most—or even the most significant—of the plaintiff's job duties were absorbed by substantially younger employees. This standard is flexible and properly consistent with the Court's obligation to draw all reasonable inferences in the plaintiff employee's favor when deciding an employer's motion for summary judgment.

Turning back to this case, the Court concludes that the evidence allows a reasonable inference that Steeno's job duties were mostly absorbed by a substantially younger employee. True, the undisputed evidence shows that Steeno's duties were distributed to two individuals, and only one was substantially younger. And the record is silent regarding what proportion of Steeno's time was spent on the duties assigned to Angio and Heuer respectively. But Steeno's job title was "Southeast Regional Used Trailer Director" and the evidence shows that his supervisory responsibilities were absorbed by the similarly titled "Northeast Regional Used Trailer Director" Heuer. This is sufficient to support the inference that the most significant duties of Steeno's job were assigned to a substantially younger employee, even if there is no evidence

that those duties occupied more than half of Steeno's time. Under the standard discussed above, this is enough to establish the fourth prong of a prima facie case under a mini-RIF analysis .

### B. Legitimate Reason and Pretext

*1. Legitimate, Nondiscriminatory Reason*

Because Steeno has established a prima facie case of age discrimination under the mini-RIF analysis, the burden shifts back to Wabash to articulate a legitimate, nondiscriminatory reason for the adverse action in order to rebut the presumption of discrimination. *McDonnell Douglas*, 411 U.S. at 802; *Michas,* 209 F.3d at 694.

Gayman stated in his affidavit that he and Ewald had determined that both Angio and Steeno were performing their duties equally well and either could have been terminated without disrupting the operations of the Calhoun, Georgia location. DE 40-4 at 3. Gayman asserted that he and Ewald ultimately decided to terminate Steeno because his yearly salary was more than $20,000 more than Angio's, and the "overall goal was to eliminate the greatest amount of expense for [Wabash]." *Id.* at 3-4. Ewald's affidavit indicates the same line of reasoning. DE 40-5 at 2. Maris confirmed this reasoning, stating in his affidavit that he understood "that [Steeno's] termination was a result of the economic crisis facing the Wabash National companies and was not in any way related to his age." DE 40-2 at 3. Further, both Ewald and Gayman stated in their affidavits that they did not discuss or consider either Angio's or Steeno's age when making their decision. DE 40-4 at 4; DE 40-5 at 2. This explanation of the decision to terminate Steeno demonstrates a sufficiently legitimate and nondiscriminatory reason behind the decision to terminate Steeno.

*2. Pretext*

Because Wabash has articulated a nondiscriminatory reason for terminating Steeno, the burden of proof would shift back to Steeno to show that the reason articulated is a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804; *Michas*, 209 F.3d at 694. "Pretext is not shown in an ADEA action merely by demonstrating that [the employer] erred or exercised poor business judgement; instead [the plaintiff] must establish that [the employer] did not believe the reasons it gave for eliminating his position." *Ritter v. Hill 'N Dale Farm, Inc.*, 231 F.3d 1039, 1044 (7th Cir. 2000). The Court does "not sit as a 'super-personnel department,' weighing the wisdom of a company's employment decisions; rather, [it is] concerned only with whether the employer's proffered explanation was honest." *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 984 (7th Cir. 2001).

Pretext may be proven through direct evidence that the employer was motivated by a discriminatory purpose, or indirectly by evidence that the proffered reason is not credible. *Perez v. Illinois*, 488 F.3d 773, 777-78 (7th Cir. 2007); *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1038 (7th Cir. 1993). Even so, "a plaintiff must do more than simply allege that an employer's stated reasons are inaccurate; he must still have some circumstances to support an inference that there was an improper motivation proscribed by law." *McGowan v. Deere & Co.*, 581 F.3d 575, 581 (7th Cir. 2009).

Steeno's burden to prove pretext is a difficult one to meet, especially in light of the Seventh Circuit's holding in *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120 (7th Cir. 1994), in which the Court stated, "Because age and . . . [compensation levels] are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that

16

a decision based on . . . compensation level is necessarily age-based." (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993)). The Seventh Circuit has also held that "a desire to reduce operating costs by reducing salary or benefits expenses is a legitimate, nondiscriminatory justification for terminating employees so long as it is not simply a proxy for age." *Tipsword v. Ogilvy & Mather, Inc.*, 1997 WL 9771 at *3, No. 96-1466 (7th Cir. 1997).

Steeno provides very little evidence, aside from his own sworn affidavit in support of his discrimination claim. While a nonmoving party's affidavit can create a genuine issue of material fact, the employee "must do more than challenge the judgment of his superiors through this own self-interested assertions." *Mills v. First Fed. Sav. & Loan Assoc. of Belvidere*, 83 F.3d 833, 843 (7th Cir. 1996) (quoting *Weihaupt v. Am. Medical Ass'n*, 874 F.2d 419, 428 (7th Cir. 1989)). In his Brief in Response to Defendant's Motion for Summary Judgment, Steeno does not attempt to show a genuine issue of material fact by disputing any of the evidence set forth by Wabash. DE 64 at 1-2. Rather, the majority of Steeno's argument is focused on trying to show that Wabash's articulated reason was pretextual, but at no point in his argument does Steeno offer evidence that Wabash's asserted nondiscriminatory reason was a lie. He calls the reasoning "suspicious," but does not offer any substantive evidence to support this allegation. His argument focuses on his own performance and the performance of his branch at the time of his termination, which are not in dispute. *Id.* at 6-7. He further argues that Wabash could have cut his salary to Angio's level, fired Angio, and retained him. *Id.* at 7-8. But the focus of the Court's pretext inquiry is not whether Wabash made the best decision when it decided to terminate Steeno over Angio or any other employee; rather it is the honesty of Ewald's and Gayman's belief that they chose to terminate Steeno over Angio because it would save the most

money for the company. *Barricks v. Eli Lilly & Co.,* 481 F.3d 556, 560 (7th Cir. 2007); *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006); *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000). The Court is not to determine the quality of the employment decision, only whether it was motivated by a discriminatory intent. *McGowan*, 581 F.3d at 581.

Based on the undisputed evidence in the record, the Court cannot conclude that the reasons presented for Steeno's termination were a pretext for discrimination. Rather, Ewald and Gayman based their decision to terminate Steeno on the severe financial problems facing Wabash National and its subsidiaries in 2008 and 2009. Therefore, even though Steeno succeeds in establishing his prima facie case for discrimination, his case would still fail because he has not met the ultimate burden of showing that Wabash's articulated reason for terminating him was a pretext for discrimination.

## IV. CONCLUSION

Although the evidence before the Court establishes a prima facie case for age discrimination under the ADEA, Steeno's claim must fail because he cannot show Wabash's nondiscriminatory explanation for his termination was pretext. Therefore, Defendant's Motion for Summary Judgment is hereby GRANTED. The Court DIRECTS the Clerk to enter judgment in favor of Defendant and against Plaintiff on all claims, and to treat this case as closed.

SO ORDERED.

ENTERED:  September 29, 2011

                                                   /s/ JON E. DEGUILIO
                                                   Judge
                                                   United States District Court